UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RICHARD T. L.,

                Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,

                Defendant.

Case No.:  23-cv-640-DDL

**ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Richard T. L. moves the Court to remand his application to the Social Security Administration (the "Administration") for an award of benefits or, alternatively, for further proceedings.  *See generally* Dkt. No. 17.  For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled for purposes of Plaintiff's Title II claim is free of legal error and supported by substantial evidence, and is **AFFIRMED**.  However, the Court finds the ALJ's adjudication of Plaintiff's Title XVI claim was legally erroneous, and is not supported by substantial evidence.   Plaintiff's Title XVI claim is therefore **REMANDED** to the Administration for further proceedings consistent with this Order.

# I.

## BACKGROUND

**A.    Plaintiff's Application for Disability Benefits**

On October 30, 2020, Plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), respectively, alleging his diabetes, "heart condition," frequent headaches, arthritis and other conditions rendered him unable to work as of March 21, 2017.  *See* Certified Administrative Record ("AR") [Dkt. No. 13] at 306-07, 315.[1]   After his application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on March 9, 2022 before ALJ Randolph Schum.  *Id.* at 42-57.  Plaintiff appeared with counsel and gave testimony.  *Id.*  The ALJ issued an unfavorable decision on March 30, 2022, having concluded Plaintiff "has not been under a disability, as defined in [the Act], from November 21, 2019, through the date of [the] decision." [2]  *Id.* at 36.  On March 23, 2023, the Appeals Council denied review, and the ALJ's decision became final.  *See id.* at 8-10.

**B.    Summary of the ALJ's Findings**

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their

---

[1]    The Court uses the parties' pagination of the AR.  All other docket citations are to the CM/ECF page numbers.

[2]    Plaintiff's earlier application for Title II disability insurance benefits, filed April 28, 2017 (the "2017 Application"), was denied in a decision dated November 20, 2019 (the "2019 Decision").  As will be addressed later in this Order, the ALJ in the present action evaluated Plaintiff's eligibility for benefits under both Title II and Title XVI for the period beginning the day after the previous adverse determination, November 21, 2019.  *See* AR at 26.  Plaintiff asserts this was error.

age, education, and work experience.  *See* 42 U.S.C. § 423(d).  The Administration employs a sequential five-step evaluation to make this determination.[3]

Before proceeding with an evaluation whether Plaintiff is disabled, the ALJ considered the appropriate time period for such evaluation.  AR at 25-26.  The ALJ noted Plaintiff's 2017 Application and that Plaintiff "was found to be not disabled in a final decision by an Administrative Law Judge dated November 20, 2019."  *Id*. at 25.  For the period of time after the 2019 Decision, the ALJ found the presumption of continuing disability applicable by operation of *Chavez v. Bowen,* 844 F.2d 691 (9th Cir. 1988) and the Administration's Acquiescence Ruling 97-4(9) (discussed below) had been rebutted because Plaintiff's age had increased since the 2017 Application, and because the current application included a claim for Title XVI benefits which was not part of the 2017 Application.  *Id.* at 25-26.  However, the ALJ also found no basis to reopen the 2017 Application or to readjudicate the prior ALJ's finding Plaintiff was not disabled.  *Id.* at 26.  Accordingly, the ALJ found "for the current Title II application, the period of consideration began on November 21, 2019" (*i.e.*, the day after the 2019 Decision). *Id.*  The ALJ then conducted the five-step sequential evaluation.  *Id.* at 28-35.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 21, 2019.  *Id*. at 28.  At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar

---

[3]     The ALJ must determine the following: one, whether the claimant is engaged in substantial gainful activity; two, whether the claimant suffers from a severe impairment within the meaning of the regulations; three, whether the impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments; four, whether, given the claimant's residual functional capacity ("RFC") based on all impairments, education and work history, the claimant can perform their past relevant work; and five, whether the claimant can make an adjustment to other work based on his or her RFC.  If the claimant is found not disabled at any step, the analysis does not proceed to the next step.

spine; degenerative changes of the left knee; and remote history of stab wounds.[4] *Id.* At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id.* at 30.

Proceeding to step four, the ALJ determined Plaintiff could:

> perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except [that he could] lift and/or carry 20 pounds occasionally, ten pounds frequently; stand and/or walk for six hours out of eight hours; sit for six hours out of eight hours; never climb ropes, ladders or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; and avoid concentrated exposure to unprotected heights and moving and dangerous machinery.

AR at 30.

In formulating this RFC, the ALJ considered Plaintiff's subjective testimony regarding his limitations. *Id.* at 31-32. The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but the objective medical evidence did not support Plaintiff's allegations as to their limiting effects. *Id.* at. 31.

/ / /

---

[4]    The ALJ found Plaintiff's coronary artery disease was medically determinable but "did not pose more than a minimal limitation in his ability to perform basic work activities" and was therefore non-severe. AR at 28. Plaintiff's alleged headaches and left hand injury were not medically determinable. *Id.* at 30. Regarding Plaintiff's medically determinable mental impairments of anxiety and depression, the ALJ concluded after conducting a Paragraph B analysis these conditions "did not cause more than minimal limitation" to Plaintiff's ability to perform work activities and were non-severe. *Id.* at 28-29. The ALJ noted Plaintiff also alleged post-traumatic stress disorder and stated that because of the "substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses," all of Plaintiff's alleged mental conditions were "considered together, instead of separately, regardless of the diagnostic label attached." *Id.*

The ALJ also considered the opinion evidence and prior administrative medical findings in the record.  AR at 33-36.  The ALJ found the assessments by state agency medical consultants T. Dupont, M.D. and J. Hartman, M.D. at the initial and reconsideration levels that Plaintiff was capable of light work persuasive, as they were supported by and consistent with the objective medical evidence.  *Id.* at 33.  Opinions offered by examining and treating providers F. Dulin, M.D., H. Nguyen, M.D., R. Paul, PA-C, and A. Miles, Ph.D., and consultative examiner J. Livesay, Ph.D., were unpersuasive.  *Id.* at 33-36.  In each instance, the ALJ found these opinions unsupported by, and inconsistent with, the medical record.  *See id.* The ALJ rejected statements by Drs. Nguyen and Dulin and Mr. Paul regarding Plaintiff's ability to engage in gainful employment, because "whether the claimant is disabled" within the meaning of the Act is a determination reserved for the Commissioner.  *Id.* at 34.

Having considered the record as described above, the ALJ concluded the above-described RFC was "supported by the opinions of the . . . medical consultants and the medical evidence of record."  AR at 36.  Based on the RFC and the testimony of the vocational expert, the ALJ further found at step four Plaintiff could perform his past relevant work as Casino Manager as that position is generally performed in the national economy.  *Id.*  Accordingly, the ALJ did not proceed to step five but instead concluded Plaintiff was not disabled within the meaning of the Act.  *Id.* at 36-37; *see* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."); 20 C.F.R. § 416.920(a)(4)(iv) (same).

## II.

## ISSUES ON APPEAL

Although Plaintiff identifies six discrete issues for judicial review, *see* Dkt. No. 17-1 at 2, his briefing does not clearly discuss those issues in a cohesive / / /

manner.   The Court has endeavored to eliminate duplicative and misplaced arguments, and will address Plaintiff's allegations of error as follows:

1) Whether the ALJ erred in determining the relevant time period to assess Plaintiff's disability was from November 21, 2019 to the date of decision;

2) Whether the ALJ erred by disregarding the opinions of Drs. Nguyen, Ly, Dulin, and Miles, and Mr. Paul;

3) Whether the ALJ erred in finding Plaintiff's heart disease and mental impairments non-severe;

4) Whether the RFC reflects the limiting effects of Plaintiff's combined physical and mental impairments, both severe and non-severe; and

5) Whether the ALJ incorrectly rejected Plaintiff's symptom testimony, such that the credit-as-true rule should apply.

## III.

## **STANDARD OF REVIEW**

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F. 4th 732, 738 (9th Cir. 2023).[5]  The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence."  *Id.*  "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance."  *Id.*  This Court must review the entire record and consider adverse as well as supporting evidence.  *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Id.*  Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

---

[5]     Unless otherwise noted, all internal quotation marks, ellipses, brackets, citations and footnotes are omitted from citations.

23-cv-640-DDL

ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

## IV.

## DISCUSSION

Bearing these standards in mind, the Court considers each of the above-identified issues on appeal.

### A. Time Period of Consideration

"The principles of res judicata apply to administrative decisions regarding disability." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (citing *Chavez*, 844 F.2d 691). Where a claimant has been found not disabled in a previous administrative proceeding, a presumption of continuing nondisability applies, which can be rebutted on a showing of "changed circumstances." *Id.*; *see also Ahearn*, 988 F.3d at 1118 ("An ALJ's determination that a claimant is not disabled creates, for future applications by that same claimant, a presumption that [the claimant] continued to be able to work after that date."). "A previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent judge absent new information not presented to the

1  first judge." *Stubbs-Danielson*, 539 F.3d at 1173; *see also Giancola v. Colvin*, 31
2  F. Supp. 3d 1215, 1220-21 (E.D. Wash. 2014) ("A prior, final determination of
3  nondisability cannot be re-litigated through the date of the prior decision.").

4  　　Furthermore, "[b]ecause a denial of a motion to reopen is a discretionary
5  decision, it is not final and, thus, is not generally reviewable by a district court."
6  *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).  The Court may review this
7  discretionary decision if Plaintiff raises a "colorable constitutional claim," *see id.*, or
8  the ALJ has constructively reopened the prior decision by "consider[ing] on the
9  merits the issue of the claimant's disability during the already-adjudicated period."
10  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995), *as amended* (Apr. 9, 1996),
11  *superseded on other grounds by* 20 C.F.R. parts 404 & 416.

12  　　Here, the ALJ determined Plaintiff had rebutted the presumption of
13  continuing nondisability because "there had been an age change since the prior
14  decision, and the current claim included a Title XVI claim which was not part of the
15  prior decision."  AR at 26.  But, the ALJ "did not find a basis for reopening [the 2019
16  Decision]."  *Id.*  The ALJ proceeded to assess Plaintiff's disability for the period
17  November 21, 2019 through the date of the decision.  *See generally id.* at 26-36.

18  　　Plaintiff asserts "[t]he appropriate starting point for assessing Plaintiff's
19  disability was March 21, 2017," the alleged onset date, "not November 20, 2019,"
20  the date of the 2019 Decision.  Dkt. No. 17-1 at 8.  Plaintiff further argues the Court
21  may review the ALJ's decision not to reopen the 2019 Decision for two reasons:
22  first, because the failure to provide a Vietnamese translator violated Plaintiff's due
23  process rights; and second, because the ALJ constructively reopened the 2019
24  Decision by considering the opinions of state agency medical consultants who had
25  reviewed records from the 2017-2019 period in formulating their opinions.  Dkt. No.
26  17-1 at 9-13.

27  / / /

28  / / /

### 1. *Title II Claim*

The Court is not persuaded Plaintiff's due process rights were violated.  It is true that Plaintiff requested a Vietnamese translator in advance of the hearing, and none was present on March 9, 2022.  AR at 45, 391.  However, Plaintiff was given the choice to reschedule his hearing to a time when a translator could be present.  After consulting his attorney, Plaintiff elected to proceed, asking only that the ALJ "speak slowly."  *Id.* at 45-46.  The transcript does not reveal Plaintiff could not follow the proceedings.  *Id.* at 42-57.  Because "[n]othing in the record evinces" that Plaintiff was unable to understand the proceedings or meaningfully participate in them, the Court does not find Plaintiff has stated a "colorable constitutional claim," and will not disturb the ALJ's discretionary decision not to reopen the 2019 Decision on this basis.  *See Klemm*, 543 F.3d at 1144.

The Court is also not persuaded the ALJ "*de facto*" reopened the 2019 Decision by evaluating the opinions of state agency medical consultants Dr. Dupont and Dr. Hartman.  Dkt. No. 17-1 at 13.  Drs. Dupont and Hartman both cited to the 2019 Decision in concluding the evidence did not demonstrate a "material change" warranting a change in Plaintiff's already-adjudicated RFC.  *See* AR at 109, 116, 128, 151-52, 168.  The ALJ found their opinions persuasive "where they were supported by and consistent with the record."  AR at 33.  The ALJ acknowledged Drs. Dupont and Hartman had "improperly relied on the prior decision," but noted their ultimate determination that Plaintiff was capable of light work was supported by the evidence in the record.[6]  *Id.*  The Court agrees with the Commissioner that in doing so, the ALJ did not "genuinely determine the issue of disability during the previously adjudicated period."  *See* Dkt. No. 24 at 10.  "Th[e]

---

[6]    The Court understands the ALJ found such reliance improper because the consultants assumed *Chavez* applied, but the ALJ found Plaintiff had "successfully rebutted" the presumption of continuing nondisability.  *See* AR at 25-26, 112, 170.

absence of any such determination is clear from [the ALJ's] findings," which are explicitly limited to the period November 21, 2019 to March 30, 2022.  *See Petersen v. Barnhart*, 213 F. App'x 600, 605 (9th Cir. 2006) (unpublished) (rejecting similar argument).[7]  Accordingly, the Court concludes the 2019 Decision was not constructively reopened.

For the foregoing reasons, the Court finds no error in the ALJ's decision not to reopen the 2019 Decision and to evaluate Plaintiff's disability starting from November 21, 2019, for the purposes of Plaintiff's Title II claim.

### 2. *Title XVI Claim*

The Court reaches a different conclusion, however, with respect to Plaintiff's Title XVI claim for supplemental security income.  In concluding that Plaintiff had overcome *Chavez's* presumption of continuing disability, the ALJ noted Plaintiff's Title XVI claim "was not part of the prior decision."  AR at 25-26.  The ALJ also identified November 21, 2019 as the appropriate starting point for consideration "**for the current Title II application**."  *Id.* at 26 (emphasis added); *see also id.* ("[T]he period of consideration **for the Title II application** began on November 21, 2019.") (emphasis added).  Notwithstanding this determination, the ALJ did not evaluate Plaintiff's Title XVI claim from the alleged onset date of March 2017, but instead routinely characterized evidence predating November 21, 2019 as outside the "period of consideration" and thus without probative value.  *See id.* at 33, 34, 35.  This was error.

---

[7]     *See also Browning v. Barnhart*, 61 F. App'x 503, 504 (9th Cir. 2003) (unpublished) (finding prior decision not constructively reopened where adjudicator "expressly and clearly disavowed any intention to reopen consideration of [p]laintiff's first application for benefits"); *Rita L. S. v. Comm'r of Soc. Sec.*, No. 1:16-CV-01981-MC, 2018 WL 4361039, at *4 (D. Or. Sept. 13, 2018) (finding no *de facto* reopening of the record given "the ALJ's explicit refusal to reopen the prior decision" and collecting cases).

23-cv-640-DDL

Simply put, Plaintiff's application for supplemental security income was a new claim.  Given the symmetry between the five-step sequential evaluation for Titles II and XVI (*compare* 20 C.F.R. § 404.1520 *with* 20 C.F.R. § 416.920), the Court might assume from the ALJ's decision not to reopen the 2019 Decision that the ALJ adopted the "findings concerning residual functional capacity, education, and work experience" as applying to the Title XVI claim for the previously-adjudicated period.  *See Stubbs-Danielson*, 539 F.3d at 1173 (noting such findings "are entitled to some res judicata consideration" in subsequent proceedings).  But, the ALJ expressly disclaimed he was doing so.  AR at 26.  The Court cannot affirm "on a ground upon which [the ALJ] did not rely."  *Garrison*, 759 F.3d at 1010.

Moreover, in determining the appropriate "period of consideration," the ALJ acknowledged the Title XVI claim was "not part of the prior decision," and cited Acquiescence Ruling 97-4(9), which provides that prior determination claimant is not disabled is given res judicata effect in subsequent proceedings only where the subsequent claim "arises **under the same title** of the [Act]."[8]  *See* Acquiescence Ruling 97-4(9), 1997 WL 742758, at *1 (emphasis added); *see also* AR at 112 (state agency medical consultant's note that *Chavez* presumption "technically applies only to [Title II] portion" of Plaintiff's application).  Yet, without explanation, the ALJ rejected evidence related to Plaintiff's Title XVI claim on the basis that it was predated the 2019 Decision.  *See* AR at 33-35.  The Court therefore agrees with Plaintiff that despite "conced[ing] that res judicata did not apply" to the Title XVI application, the ALJ "relied solely on the post[-]November 2019 medical evidence" in adjudicating that application, "without . . . legal justification."  Dkt. No. 17-1 at 8.

---

[8]     The Administration's acquiescence rulings do not "carry the force of law," *see Larson v. Saul*, 967 F.3d 914, 925 (9th Cir. 2020), but the Court finds the Administration's guidance to its adjudicators informative on this issue.

Because the record does not permit the Court to "reasonably . . . discern[]" the ALJ's path, the Court cannot conclude the ALJ's error was harmless. *Brown-Hunter*, 806 F.3d at 492. The Court further finds the determination Plaintiff was not disabled for purposes of his Title XVI claim is not supported by substantial evidence, because the ALJ ignored or discounted evidence from the period March 21, 2017 to November 20, 2019 that was relevant to this claim. *See* AR at 33-35. The Title XVI claim must be remanded.

The Court declines, however, to remand for an immediate award of benefits. The record does not support a finding that the record "is fully developed" and "all essential factual issues have been resolved" such that the ALJ "would be required to find the claimant disabled on remand" as to Plaintiff's Title XVI claim. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (describing the "rare circumstances" warranting remand for payment of benefits). To the contrary, as a result of the ALJ's error, that claim has not been fully adjudicated. The "proper course," then, "is to remand to the agency" for further administrative proceedings. *See id.*; *accord Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) ("When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary.") The Court therefore directs the Commissioner on remand to evaluate Plaintiff's entitlement to supplemental security income for the period March 21, 2017 (the alleged onset date) to March 30, 2022 (the date of the ALJ's decision).

Having determined Plaintiff's application for supplemental security income pursuant to Title XVI of the Act must be remanded for further consideration, the remainder of the Court's discussion addresses the asserted errors as they relate to the ALJ's consideration of Plaintiff's Title II claim.

## B. The ALJ's Evaluation of Medical Opinions in the Record

Plaintiff asserts the ALJ erred in discounting the medical opinions of Drs. Nguyen, Ly, Dulin, and Miles, and Mr. Paul. *See* Dkt. No. 17-1 at 16-23. The

Court has examined the ALJ's evaluation of the medical opinions in the record, and finds no error.[9]

The Court begins with Plaintiff's argument that a treating physician's opinion "is entitled to controlling weight." *Id.* at 16; *see also id.* at 22 n.11 (similarly stating a treating physician's opinion "is entitled to special weight"); Dkt. No. 25 at 7 (similarly stating "Dr. [*sic*] Paul is a reliable treating source whose opinion should be given controlling weight"). Historically, the "treating physician rule" required the ALJ to give greater weight to the opinion of a claimant's treating physician than to the opinion of a doctor who did not treat the claimant. *See Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021) (describing the "three types of medical opinions in social security cases" and the comparatively greater weight given to a treating provider's opinion). In 2017, however, the Social Security Administration adopted new regulations. The now-operative regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each opinion in relationship to the record. *See* 20 C.F.R. § 404.1527(b). The "most important factors" the ALJ must consider in doing so are "supportability" (*i.e.*, whether the provider supported his or her opinion with citations to objective findings) and "consistency" (*i.e.*, whether the opinion is consistent with other

---

[9]    Plaintiff cites tests performed by Dr. Ly (incorrectly identified as "Dr. Li") and states Dr. Nguyen was "working with [Dr. Ly] and relied on" the tests she performed in formulating his opinion as to Plaintiff's functional limitations. Dkt. No. 17-1 at 17. Test results are not medical opinions, *see* 20 C.F.R. § 404.1527, and Plaintiff does not otherwise identify any opinion by Dr. Ly as to Plaintiff's functional limitations. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issue claimant-appellant "failed to argue . . . with any specificity"); *accord* Fed. R. Civ. P. Supp. Soc. Sec. R. 5 ("A brief must support assertions of fact by citations to particular parts of the record.").

evidence in the record).  20 C.F.R. § 404.1520c(a); *see also id*. § 404.1520c(c)(1) (defining "supportability" and "consistency").   These changes "displace[d] [the] longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining [or treating] doctor's opinion."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As the Ninth Circuit has explained:

> for claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.

*Id*.  The Court therefore rejects Plaintiff's arguments that various opinions in the record warrant "special" or "controlling" weight, as they are based on obsolete case law.  The Court turns now to the specific opinions at issue, and the ALJ's stated reasons for finding them unpersuasive.

## 1. *Dr. Nguyen*

On March 7, 2022, Dr. Nguyen completed a check-the-box form titled "Expert Opinion Statement."  AR at 607-10.  Dr. Nguyen identified Plaintiff's diagnoses as: 1) congestive heart failure; 2) coronary artery disease; 3) aortic valve stenosis; 4) hypertension; 5) carotid artery stenosis; 6) diabetes mellitus; 7) moderate osteoarthritis; and 8) left-sided facial weakness.  *See id.*  In response to the question, "In your opinion, does [Plaintiff] have the residual functional capacity to perform competitive work on a sustained basis?" Dr. Nguyen checked "No," but did not provide further explanation for this opinion.  *Id.*  Also in check-the-box form, Dr. Nguyen assessed various limitations in Plaintiff's ability to stand, walk, and sit during the course of a workday, and indicated Plaintiff would be unable to perform simple, repetitive job tasks.  *Id.*  Dr. Nguyen did not cite test results or objective findings in support of his assessments.  *See id.*

The ALJ found the Dr. Nguyen's opinion unpersuasive based on his determination that it was neither supported by, nor consistent with, the medical

evidence in the record.  *See* AR at 33-34.  The ALJ identified contrary findings demonstrating Plaintiff had normal motor strength, reflexes and intact sensation; treatment records from May 2021 documenting Plaintiff denied joint stiffness, gait abnormality, and changes in sensation or motor capability; and "contemporaneous" treatment records from February 2022 documenting that Plaintiff denied neurological, musculoskeletal and psychological symptoms and examination findings were normal.  *Id*.  The ALJ also noted Dr. Nguyen failed to support his conclusions with contemporaneous treatment records, examination records, or diagnostic tests; to the contrary, the ALJ observed "there was no evidence Dr. Nguyen provided any treatment" for Plaintiff's alleged severe impairments and had only produced evidence of a telephone visit in July 2021 "where no examination occurred."  *Id*.  Because Dr. Nguyen's opinion lacked objective support, the ALJ concluded Dr. Nguyen relied too heavily on Plaintiff's subjective complaints.  *Id*.  Finally, the ALJ disregarded Dr. Nguyen's opinion regarding "the vocational effects of [Plaintiff's] psychological conditions," finding Dr. Nguyen was "unqualified" to make such assessments.  *Id*.

The Court finds no error in the ALJ's weighing of Dr. Nguyen's opinion. Where the provider fails to support their opinion with clinical findings or other objective medical evidence, it is not error for the ALJ to discount the opinion.  *See Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024); *accord Ford*, 950 F.3d at 1154 (noting the ALJ "need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings").  Nor is it error to discount an opinion where it is inconsistent with the other medical evidence in the record, including the provider's own records.  *See id.*; *accord* 20 C.F.R. § 404.1527(b).  Here, the ALJ appropriately found Dr. Nguyen's opinion regarding Plaintiff's inability to sit, stand, walk and perform basic work functions was inconsistent with the record.  The ALJ also reasonably discounted Dr. Nguyen's opinion to the extent it was based on Plaintiff's subjective statements,

which the ALJ notably also did not find credible.  *See*, *e.g.*, *Lillian B. v. Saul*, No. C19-6110-MAT, 2020 WL 3639587, at *4 (W.D. Wash. July 6, 2020) (finding provider's assessment "unsupported" where it was made "[w]ithout a basis . . . other than plaintiff's discounted self-reports").

### 2. *Mr. Paul*

On December 30, 2019, Mr. Paul wrote to the Social Security Appeals Board regarding Plaintiff's condition.  AR at 586-88.  The letter documents the findings from Mr. Paul's examination of Plaintiff and concludes with his statement that "[b]ased on [Plaintiff's] slow progress with treatment and continued pain affecting his quality of life he does not appear fit to continue the work he was doing previously and has trouble with sedentary positions as well."  *Id*. at 588.

The ALJ found Mr. Paul's opinion was not persuasive, as it was not supported by, and inconsistent with, the objective medical evidence.  AR at 34. The ALJ identified the benign results of physical examinations as described above as inconsistent with Mr. Paul's assessment that Plaintiff was physically incapable of working even at the sedentary level.  *Id*.  The ALJ further noted at the time Mr. Paul prepared his opinion, he had only seen Plaintiff once since the 2019 Decision was issued, indicating that Mr. Paul's opinion was based on evidence already considered in the 2019 Application which resulted in a non-disability determination. The ALJ rejected Mr. Paul's statement that Plaintiff was "not fit" to return to his prior position, noting such a determination is "reserved for the Commissioner."  *Id*. Finally, the ALJ noted Mr. Paul is a physician's assistant and found his opinion less persuasive than those of "a fully qualified medical doctor."  *Id*.

For the same reasons explained above, the ALJ did not err in discounting Mr. Paul's opinion for lack of consistency and supportability.  The ALJ identified specific, objective evidence in the record undermining Mr. Paul's assessment.  It was also not error to discount the opinion on the basis of Mr. Paul's relatively short treatment history.  Finally, the ALJ correctly disregarded Mr. Paul's statement

1
2
3

regarding Plaintiff's fitness for work, sedentary or otherwise.  *See* 20 C.F.R.
§ 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or
'unable to work' does not mean that we will determine that you are disabled.").[10]

4

### 3. *Dr. Dulin*

5
6
7
8
9
10
11
12
13
14

On February 16, 2021, Dr. Dulin completed a check-the-box form titled
"Physical Medical Source Statement" provided to him by Plaintiff's attorney.  AR at
573-76.  Dr. Dulin indicated he had seen Plaintiff one time, and on the basis of that
visit assessed Plaintiff as unable to sit or stand for more than 2 hours per day and
assigned various other work-related restrictions.  *See id.*  Dr. Dulin stated Plaintiff
would require frequent unscheduled breaks and would be "off-task" for more than
25 percent of the workday, due to PTSD, anxiety, depression, diffuse idiopathic
skeletal hypertrosis and remote stab wounds.  *See id.*  Dr. Dulin identified "multiple
bodily scars" and "left frozen shoulder syndrome" as the objective signs and clinical
findings supporting these limitations.  *Id.* at 573.

15
16
17
18
19
20
21

The ALJ found Dr. Dulin's opinion unpersuasive, in part because of his
mistaken understanding that Dr. Dulin's one-time assessment occurred before the
date of the 2019 Decision.  AR at 33.  The ALJ also observed Dr. Dulin's suggested
work restrictions were inconsistent with the record, again noting the largely normal
results of Plaintiff's physical examinations.  AR at 33.  The ALJ also noted Dr. Dulin
failed to support his opinion with test results or other objective findings, suggesting
over-reliance on Plaintiff's subjective complaints in formulating his assessment.  *Id.*

22
23

24
25
26
27
28

---

[10]   *See also Amonson v. Berryhill*, No. 2:18-CV-00579 CKD, 2019 WL 2524439,
at *4 (E.D. Cal. June 19, 2019) ("the ultimate issue of whether plaintiff was disabled
at any time during the alleged disability period is a determination reserved for the
Commissioner") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001));
*Hilliker v. Berryhill*, No. 6:16-CV-00827-HZ, 2017 WL 4220529, at *4 (D. Or. Sept.
21, 2017) ("An opinion that a claimant is disabled is not a medical opinion under
the Act.") (citing *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)).

Plaintiff states "there is no support for the ALJ's . . . rejection of Dr. Dulin's opinion." Dkt. No. 17-1 at 25.  The Court finds to the contrary that the ALJ provided adequate reason for discounting Dr. Dulin's opinion.  As explained above, the ALJ may properly reject an "unexplained" and "unsupported" medical opinion.  *Woods*, 32 F.4th at 793.  The ALJ also reasonably discounted Dr. Dulin's opinion as based on Plaintiff's discredited subjective statements.  *See Lillian B.*, 2020 WL 3639587, at *4.  As Plaintiff correctly notes, the ALJ's statement that Dr. Dulin's opinion had been rendered before the 2019 Decision was inaccurate.  Dkt. No. 17-1 at 24.  But, Plaintiff ignores the other reasons the ALJ provided for rejecting Dr. Dulin's opinion.  The ALJ's mistake regarding the date of Dr. Dulin's report was harmless error in light of the other, sufficient reasons the ALJ provided for finding the opinion unpersuasive. *See Ford*, 950 F.3d at 1157 (finding ALJ's "factual error" harmless where "there [was] ample evidence in the record supporting the ALJ's conclusion").

### 4. *Dr. Miles*

On December 23, 2019, Dr. Miles wrote a letter stating Plaintiff "was unable to work on a sustained basis" due to his PTSD.  AR at 585.  Dr. Miles further indicated she had administered several psychological assessments which revealed "severe depression" and "moderate anxiety." *Id.*  Dr. Miles stated Plaintiff's activities of daily living were "significantly impacted by his pain," and indicated he was unable to sit, stand, walk or "conduct any type of activity for a prolonged period of time." *Id.*  Dr. Miles also assessed Plaintiff with "marked difficulties in maintaining concentration, memory, persistence, or pace" and noted he had "significantly reduced sleep quality." *Id.*  Dr. Miles concluded Plaintiff was "unable to resume any type of gainful employment" due to his PTSD. *Id.*

The ALJ found Dr. Miles's opinion unpersuasive. AR at 35.  The ALJ noted, but did not consider, Dr. Miles's assessment dated August 28, 2019, as it predated the 2019 Decision. *Id.*  However, the ALJ observed Dr. Miles did not state whether she had treated Plaintiff since her August 28, 2019 opinion, leading the ALJ to

conclude that her December 2019 opinion was largely based on treatment outside of the relevant period. *Id.* The ALJ further found Dr. Miles's opinion "incomplete" and "unpersuasive," as it was not supported by any contemporaneous treatment records. *Id.* The ALJ also found Dr. Miles's opinion inconsistent with Plaintiff's subjective reports to providers wherein he denied any psychological symptoms, and with negative results on objective examination. *Id.* Finally, the ALJ disregarded Dr. Miles's statement Plaintiff could not engage in "any type of gainful employment," as that determination is reserved for the Commissioner. *Id.*

Plaintiff asserts the ALJ erred by "totally disregard[ing]" Dr. Miles's opinion. Dkt. No. 17-1 at 21. However, for the reasons discussed above, the Court finds the determination that Dr. Miles's opinion was not persuasive was not erroneous. The ALJ identified contrary evidence in the record undermining Dr. Miles's assessment, and correctly noted the absence of any objective findings from within the relevant treatment period to support her assessments.[11] It was also not error for the ALJ to disregard Dr. Miles's statement that Plaintiff was unable to work, as explained above.

Plaintiff's further charge that the ALJ was obligated to "develop the record" and subpoena Dr. Miles's testimony or records is not persuasive. Dkt. No. 17-1 at 21. "The ALJ . . . has an independent duty to fully and fairly develop the record and to assure the claimant's interests are considered." *Tonapetyan*, 242 F.3d at

---

[11]     Plaintiff further states "Dr. Miles' opinion in fact agreed with the psychological assessment by [consultative examiner] Dr. Livejay [*sic*] in 2021." Dkt. No. 17-1 at 22. The Court notes the ALJ also found Dr. Livesay's opinion unpersuasive, as it was undermined by Plaintiff's contemporaneous denials of psychological symptoms, lack of psychological care, and activities of daily living. AR at 35. Although it does not appear Plaintiff is challenging the ALJ's assessment of Dr. Livesay's opinion, the Court nevertheless finds it was not erroneous, because the ALJ reasonably concluded Dr. Livesay's opinion did not meet the supportability and consistency requirements of the applicable regulations.

1150.  However, the ALJ's duty to conduct a further inquiry is triggered only when the evidence in the record is "ambiguous" or "insufficient to allow for proper evaluation."  *Casner v. Colvin*, 958 F. Supp. 2d 1087, 1092 (C.D. Cal. 2013).  For the reasons discussed above, the ALJ properly discounted Dr. Miles's opinion as inconsistent with, and not supported by, the record.  Plaintiff has not persuaded the Court that by doing so, the ALJ was then obligated to seek supplementation of the record.  Plaintiff has not alleged any additional information which renders the ALJ's determination regarding Dr. Miles's opinion inappropriate, nor any other ambiguity in the record.  *See id.* at 1100 (finding the ALJ had no duty to contact physician absent showing the record was "inadequate to allow the ALJ to determine disability").  Notably, Plaintiff's attorney confirmed at the hearing that the record was complete.  AR at 47.  For these reasons, the Court finds the medical record available to the ALJ was neither incomplete nor ambiguous, and the ALJ did not err by failing to request additional records or testimony from Dr. Miles.

## C. Severity of Impairments

Plaintiff challenges the ALJ's determination at step two of the sequential evaluation that his "mental problems" and coronary artery disease were not severe impairments.  Dkt. No. 17-1 at 22-23.  In support of this contention, Plaintiff largely repeats his arguments regarding the ALJ's rejection of the opinions of Drs. Nguyen, Dulin and Miles.  *See id.*  For the reasons already detailed, these arguments are not persuasive.  Nor is the Court persuaded the ALJ "substituted his own lay opinion for those of the doctors."  *Id.* at 23.

In finding Plaintiff's cardiovascular condition nonsevere, the ALJ identified objective tests indicating only "mild findings," and noted Plaintiff's coronary artery disease was controlled by medication.  *See* AR at 28.  This evidence led the ALJ to conclude Plaintiff's cardiovascular condition did not meaningfully limit his ability to work.  *Id.*  As to Plaintiff's mental impairments, the ALJ conducted a thorough Paragraph B analysis and supported his findings that Plaintiff had only mild

limitations in all four functional areas.  *Id*. at 29.  In particular, the ALJ cited numerous mental status examinations in the record "within normal limits," Plaintiff's self-reports to providers wherein he denied psychological symptoms, and the lack of any ongoing mental health treatment.  *See id.*

"A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities."  *Ramirez v. Astrue*, 803 F. Supp. 2d 1075, 1085 (C.D. Cal. 2011) (citing 20 C.F.R. § 404.1521(a)).  Substantial evidence in the record supports the ALJ's determination that Plaintiff's mental and cardiovascular impairments were not severe.  The only contrary evidence Plaintiff identifies is the opinion testimony that was properly rejected.  Accordingly, the Court finds no error at step two of the sequential evaluation.

### D.    The Combined Effects of All Impairments

Plaintiff states the ALJ "failed to consider the combination of Plaintiff's mental limitations" in conjunction with his severe physical impairments, and "erred in finding that [P]laintiff had no functional limitations due to mental problems in contradiction to [sic] Plaintiff's treating and examining physicians."  Dkt. No. 17-1 at 24.  Plaintiff's argument in this regard largely repeats the assertions made in earlier sections of his brief, and for the reasons explained elsewhere in this opinion, fails to persuade the Court.  Nevertheless, the Court has considered the ALJ's formulation of Plaintiff's RFC and finds no error.

A claimant's "residual functional capacity is the most [the claimant] can still do despite [his or her] limitations," and is assessed "based on all the relevant evidence in [the] record."  20 C.F.R. § 416.945(a).  The ALJ's task is to "translate" the claimant's limitations into "concrete restrictions."  *Stubbs-Danielson*, 539 F.3d at 1174.  In formulating Plaintiff's RFC, the ALJ considered the objective medical evidence, the medical opinions in the record, and Plaintiff's subjective testimony. *See generally* AR at 30-36.  Based on this review of the record, the ALJ assessed Plaintiff could sustain work at the light exertional level, with additional postural and

environmental restrictions.[12]  *Id.* at 30.  The ALJ determined these combined limitations were necessary due to Plaintiff's severe impairments, but also considered Plaintiff's non-severe impairments in formulating the RFC.  *See id.*  The ALJ determined, however, that Plaintiff's coronary artery disease "did not pose more than a minimal limitation in his ability to perform basic work activities."  AR at 28.  Likewise, Plaintiff's anxiety, depression and PTSD did not limit Plaintiff's ability to do work activities more than minimally.  *Id.*  To the extent the ALJ found support in the record for limitations related to Plaintiff's impairments (severe and non-severe), those limitations are reflected in the RFC.  *Id.*

The Court concludes the ALJ assessed Plaintiff's RFC as required by the regulations, appropriately considering all the relevant evidence as reflected by his findings as to the evidence he found persuasive and that which he found not credible.  In other words, "[t]he ALJ considered and reasonably rejected the more severe limitations prescribed by" the providers discussed herein.  *Woods*, 32 F.4th at 794.  Although Plaintiff cites evidence that could support a more restrictive RFC, it is not this Court's role to "reweigh the evidence or substitute [its] judgment for that of the ALJ."  *Ahearn*, 988 F.3d 1115; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) ("If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ.").

## E. The ALJ's Credibility Determination

Plaintiff alleges "[t]he ALJ's finding that Plaintiff was not credible was improper," because there was objective evidence in the record of complaints of, and treatment for, pain.  Dkt. No. 17-1 at 25.  The Court disagrees.

The ALJ "is not required to believe every allegation of disabling pain." *Molina*, 674 F.3d at 1112.  Absent evidence of malingering, however, an ALJ must

---

[12]  Plaintiff incorrectly states the ALJ assessed his RFC as capable of medium work.  *See* Dkt. No. 17-1 at 25.

23-cv-640-DDL

offer "specific, clear and convincing reasons" for rejecting a claimant's subjective testimony regarding the limitations caused by his impairment.  *See Ferguson*, 95 F.4th at 1199.  After reviewing the evidence in the record, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause many of his alleged physical symptoms, but that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . were inconsistent" with the objective medical evidence.  AR at 31-32.  The ALJ found Plaintiff's allegations of difficulty lifting, squatting, standing, sitting, kneeling and climbing stairs were undermined by objective findings of normal motor strength, reflexes, and sensation, and normal findings regarding bilateral upper and lower, and that he walked with a normal gait.  *Id.* at 32. To the extent the ALJ found Plaintiff's testimony regarding his functional limitations credible, he accounted for those limitations by limiting Plaintiff to light exertional level, with additional postural and environmental limitations.  *Id*.  The ALJ also noted Plaintiff's subjective report that trigger point injections provided "70% pain relief," as well as successful branch block treatments and physical therapy.  *Id*.

These are clear and convincing reasons for discounting Plaintiff's subjective testimony under prevailing Ninth Circuit authority.[13]  The ALJ "enumerat[ed] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 82 F.4th at

---

[13]     *See. e.g., Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (collecting cases) (emphasis in original); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits."); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

739, and "explain[ed] why the medical evidence is *inconsistent* with the claimant's subjective testimony." *Ferguson*, 95 F.4th at 1200 (emphasis in original). The Court is therefore persuaded the ALJ did not "arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Smartt*, 53 F.4th at 499 (noting the clear and convincing standard requires the ALJ to "show his work"). The Court declines to "engage in second-guessing" the ALJ's credibility determination absent a finding of legal error. *See Thomas*, 278 F.3d at 959; *see also Brown-Hunter*, 806 F.3d at 494 ("[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review.").

## F. Substantial Evidence Supports the ALJ's Decision

The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion," and finds substantial evidence supports the ALJ's decision. *See Ahearn*, 988 F.3d at 1115.

The record confirms Plaintiff suffers from degenerative conditions in the lumbar spine and left knee, and that he suffered multiple stab wounds during a home invasion in 2009. *See, e.g.,* AR at 343-347, 415-417, 539, 544, 577. During the period November 2019 to March 2022, Plaintiff complained of pain in his back, leg and neck associated with these conditions, for which his care providers recommended medications, physical therapy, trigger point injections, and increased exercise such as tai chi or qi gong. *See*, *e.g.*, *id.* at 544-48, 557, 589-91, 599-600, 621. Plaintiff reported to his providers that these measures provided some relief. See AR at 544, 603. More specifically, he reported his medications provided "moderate pain relief," and the injections provided "70% pain relief," enabling him to "increase[] physical activity and function." *See id.* at 589-90. In February 2022, Plaintiff was noted in to have normal range of motion in his lower extremities, normal motor strength and tone, and normal muscle tone and motion in his spine "for [his] age," and to be able to "move all extremities equally." *Id.* at 595; *see also id*. at 605 (identical notation for January 2022).

Findings on mental status examinations as to orientation, speech, memory, attention, fund of knowledge, judgment, insight and thought process were regularly within normal limits.  AR at 537, 547, 552, 557, 595.  On initial review of his Title II application, the reviewer observed that "[Plaintiff] remains without psych care in any venue, and functional limitations are still preponderantly in the physical realm," and assessed Plaintiff's psychiatric impairments as nonsevere.  *Id.* at 110-11, *see also id.* at 147 (reconsideration reviewer affirming nonsevere assessment based, among other things, on "clmt own report of no current MH tx"); 568 (noting Plaintiff's lack of ongoing mental health care).  On several occasions contemporaneous to his disability hearing, Plaintiff told his providers that he had no psychological complaints.  *Id.* at 591, 600, 604.

Cardiovascular findings on physical examination were normal throughout the 2019 – 2022 period.  AR at 536, 546, 595, 604-05.  Cardiac function tests done in January 2021 demonstrated "moderate stenosis in the left superficial femoral artery," but all other findings were normal to mild.  AR at 616-18.  Dr. Ly prescribed medications for Plaintiff's angina and recommended tests to rule out COPD.  *Id.*

In March 2022, contemporaneous to his disability hearing, Plaintiff was noted to be able to "able to perform activities of daily living with no difficulty or assistance."  AR at 589-90; *see also id*. at 603 (identical notation for January 2022). Plaintiff reported in his Adult Function Report that he was able to drive himself to doctor appointments and pick up his medications at the pharmacy without help. *Id.* at 322.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's discounting of the medical opinions of Drs. Nguyen, Dulin, Miles, and Mr. Paul, adverse credibility finding, and assessment of the severity of Plaintiff's impairments.  As such, for purposes of Plaintiff's Title II claim, the ALJ's RFC and resulting determination that Plaintiff is not disabled are adequately supported and will not be disturbed.  *See Ahearn*, 988 F.3d at 1115 ("If substantial

1  evidence in the record supports the ALJ's decision we must defer to the ALJ.");

2  *see also* 42 U.S.C.A. § 405(g) ("[t]he findings of the Commissioner of Social

3  Security as to any fact, if supported by substantial evidence, shall be conclusive").

**V.**

**CONCLUSION**

6    For the foregoing reasons, the Court **AFFIRMS** the ALJ's denial of Plaintiff's

7  application for disability insurance benefits pursuant to Title II of the Act.  The Court

8  **REMANDS** Plaintiff's application for supplemental security income pursuant to

9  Title XVI of the Act to the Administration for further proceedings consistent with

10  this Order.  The Clerk of the Court shall enter judgment accordingly and terminate

11  the case.

12  **IT IS SO ORDERED**.

13  Dated: September 19, 2024

             _____

Hon. David D. Leshner
United States Magistrate Judge